IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

EDDIE THOMAS                                                                PLAINTIFF

v.                                    No. 2:19-cv-76-DPM

SOUTHWESTERN BELL TELEPHONE
COMPANY OF ARKANSAS; AT&T
CORP.; MATTHEW ALBRECHT; RICK
SEAWEL; and JOHN DOES 1-10                                        DEFENDANTS

ORDER

1.  In September 2013, Matthew Albrecht, a Southwestern Bell employee, saw Eddie Thomas and others collecting wire on the side of the road near Marianna. Albrecht was suspicious. He notified his supervisor before he called the Lee County Sheriff's office to report the activity. Deputy Sheriff Corey Wilson responded and arrested Thomas for digging up the wire that Southwestern Bell and AT&T, through Albrecht, claimed they owned. A nearly four-year prosecution followed. It ended when the charges against Thomas were dropped. Thomas says Albrecht didn't have any reason to call the Sheriff because Southwestern Bell and AT&T had previously abandoned the wire. Southwestern Bell, AT&T, Albrecht, and Rick Seawel seek judgment as a matter of law on Thomas's one remaining claim—malicious prosecution. Thomas has responded. The question now is whether there are disputed issues of material fact that require a trial. To answer

that question, the Court considers the record in the light most favorable to Thomas. *Oglesby v. Lesan*, 929 F.3d 526, 532 (8th Cir. 2019). The Arkansas law of malicious prosecution governs. *Stokes v. Southern States Co-op., Inc.*, 651 F.3d 911, 915-16 (8th Cir. 2011).

**2.** A solid claim for malicious prosecution requires Thomas to show that at least one the defendants maliciously initiated or continued a prosecution against him without probable cause. *Bank of Eureka Springs v. Evans*, 353 Ark. 438, 454, 109 S.W.3d 672, 681–82 (2003). The prosecution must also have terminated in Thomas's favor. *Ibid.*

There's no evidence from which a reasonable juror could conclude that Seawel was meaningfully involved in Thomas's prosecution. *Doc. 53-2 at 23.* At most he participated in an internal discussion on the day of the arrest. *Doc. 54 at 41.* And it's unclear what he said, knew, or directed. It's undisputed that Albrecht caused the prosecution by notifying the Lee County Sheriff's office and providing a written statement about Thomas's wire collection activities. *Doc. 53-2 at 13–14; Doc. 54 at 41.* It's undisputed that the prosecution eventually ended in Thomas's favor. If Albrecht acted without probable cause, the Court can infer malice and allow Thomas's claims against Albrecht, Southwestern Bell, and AT&T to proceed. *South Arkansas Petroleum Co. v. Schiesser*, 343 Ark. 492, 501, 36 S.W.3d 317, 322 (2001).

The Court can only decide, as a matter of law, whether Albrecht acted with probable cause if the material facts underlying his

accusations against Thomas are undisputed. *Wal-Mart Stores, Inc. v. Binns*, 341 Ark. 157, 163, 15 S.W.3d 320, 324 (2000). On this point, ownership of the wire is key and disputed. Thomas alleges, and has testified about, the existence of a memo through which Southwestern Bell disclaimed ownership and control of the wire. *Doc. 53-2 at 17–18*. Although Thomas admits he never saw the memo, he says that it was the driving force behind his and his coworkers' decision to take up the wire. *Doc. 53-2 at 18*. Albrecht either didn't know about the memo or he knew about it and, for whatever reason, disregarded it. A person of ordinary caution who knew about or, as part of his job duties, should have known about the memo, would not have reported the incident or allowed Thomas's prosecution to continue.

If the memo exists, which has not been disputed, questions of material fact preclude summary judgment. When and to whom was the memo circulated? Did Albrecht or his supervisors know about it before he called the sheriff? Did Albrecht or his supervisors know about it before he gave his written statement? Did Southwestern Bell know about and allow wire salvaging in this area by Thomas and others in prior years? Under Arkansas law, on the current record the Court cannot take these questions from a jury.

These questions should also be considered to determine whether Albrecht made a full and fair disclosure to law enforcement about what he knew. *Schiesser*, 343 Ark. at 496–97, 36 S.W.3d at 319–20. Albrecht's

affidavit, in the sense that it contains undisputed facts, is fair, but maybe not full. *Doc. 54 at 41.* His response to Thomas's request for an explanation at the August Moon Café—that Albrecht belonged to a "cover your ass association," *Doc. 53-2 at 19 & 26*—is subject to different inferences. And it can reasonably be understood to mean that Albrecht, to protect himself, would have proceeded with the prosecution no matter what he knew, and despite any explanation Thomas might have given for his actions. *Wal-Mart Stores, Inc. v. Yarbrough*, 284 Ark. 345, 349, 681 S.W.2d 359, 362 (1984).

Immediately following Thomas's 14 September 2013 arrest, Deputy Wilson recognized that the information he received from Albrecht was incomplete. He told Thomas: Albrecht "doesn't know it . . . that he is going to have to prove he owns the cable." *Doc. 54 at 36.* It's unclear whether Albrecht, Southwestern Bell, or AT&T provided any additional information about ownership after Thomas's mid-September arrest. But it is clear that the prosecutor, relying at a minimum on Albrecht's affidavit, filed charges against Thomas based on the assumption that Southwestern Bell owned the wire that Thomas was collecting. *Doc. 53-3 at 1.* And everything that followed in relation to Thomas's prosecution stemmed from that assumption, which, even after the parties' development of this record, remains unestablished. Thomas's 2 October 2013 arrest, *Doc. 54 at 39*, his indictment and nearly four-year prosecution, *Doc. 53-2 at 23*, Southwestern Bell's civil suit

against Thomas about damage during wire salvaging in 2013 at another location, *Doc. 53-2 at 22*, and everything ending in Thomas's favor, all demonstrate that Albrecht, Southwestern Bell, and AT&T at least played some part in Thomas's lengthy and unnecessary legal problems. On a murky record, whether all this amounts to malicious prosecution under Arkansas law is for a jury to sort out.

\* \* \*

The Defendants' motion for summary judgment, *Doc. 53*, is granted in part and mostly denied. Thomas's claim for malicious prosecution against Seawel is dismissed with prejudice. His claims against John Does 1-10 are dismissed without prejudice; those individuals have not been identified and the time to name them by amendment has passed. *Doc. 52 at 1*. The claims for malicious prosecution against Albrecht, Southwestern Bell, and AT&T will proceed to a trial.

Thomas needs to hire a lawyer to try this case for him. If he is unable to afford a lawyer, then he must file a motion for appointment of counsel with an *in forma pauperis* affidavit. The Court directs the Clerk to send Thomas the forms. Thomas is not entitled to an appointed lawyer. But the Court will consider any motion for appointment filed by 15 April 2022. A Third Amended Final Scheduling Order will issue.

So Ordered.

*W.P. Marshall Jr.* (signature)

D.P. Marshall Jr.
United States District Judge

16 March 2022